# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ANTHONY RAY POINTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 2:15-cv-08013-KOB** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

In 2013, a jury found Anthony Ray Pointer guilty of two counts of distribution of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); one count of possession with intent to distribute cocaine hydrochloride, in violation of § 841(a)(1), (b)(1)(C); and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.. § 924(c)(1)(A)(i).  (Cr. Doc. 70 at 1).[1]  The court sentenced him to a total of 76 months imprisonment.  (*Id.* at 2).

Mr. Pointer moves to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255, contending that his trial counsel rendered ineffective assistance because (1) they failed to present evidence showing that Mr. Pointer possessed the gun for protection of his shop instead of in furtherance of a drug trafficking crime; (2) they refused to allow Mr. Pointer to testify on his own behalf; (2) they failed to call witnesses who would have "contradict[ed] and controvert[ed]" the testimony of the Government's primary witness; and (4) the cumulative effect of counsel's failure to present evidence and call witnesses prejudiced him.  (Doc. 1 at 4–5, 7; Doc. 5 at 23, 26–27).  He also moves for the court to hold an evidentiary hearing on his motion.  (Doc. 19).

---

[1] The court cites documents from Mr. Pointer's underlying criminal case, *United States v. Pointer*, 5:12-cr-00328-KOB-TMP, as "Cr. Doc. __."

This court WILL DENY Mr. Pointer's § 2255 motion and his motion for an evidentiary hearing because he cannot establish that counsel provided ineffective assistance.

## I. BACKGROUND

In July 2012, a grand jury indicted Mr. Pointer on two counts of distribution of cocaine hydrochloride, one count of possession with intent to distribute cocaine hydrochloride, and one count of possessing a firearm in furtherance of a drug trafficking crime. (Cr. Doc. 1).

At Mr. Pointer's trial, the Government's star witness was Mark McGuire, a confidential informant whom the police had caught dealing drugs after his release from prison on another drug charge. (Cr. Doc. 60 at 2–4, 92). In exchange for a lighter sentence, Mr. McGuire agreed to help the police by making controlled buys of drugs. (*Id.* at 4–6, 35, 92). Mr. McGuire testified that on November 3, 2011, and November 10, 2011, under the supervision of Agent Jamie Jarrell, he purchased cocaine from Mr. Pointer at Mr. Pointer's car stereo installation store, Service Plus. (*Id.* at 9, 21, 90).

Before each controlled buy, Agent Jarrell searched Mr. McGuire and his car to make sure that he did not already have any drugs or money, and then placed on Mr. McGuire a wire that recorded audio and video. (Cr. Doc. 60 at 9–10, 21–22, 95). He gave Mr. McGuire approximately $1,400 to purchase cocaine from Mr. Pointer, and followed him to Service Plus. (*Id.* at 9, 21, 28, 95, 101).

At the November 3 buy, the wire recorded Mr. McGuire entering Service Plus, talking with Mr. Pointer in the work area of the shop, going into Mr. Pointer's office with him, and eventually leaving the store. (Gov't Exh. 1). Although the angle of the video is poor, the video shows that, while Mr. McGuire was in Mr. Pointer's office, at least two other people entered and left the office, and a listener can hear multiple people speaking. (*Id.*). The video does not show

2

an exchange of drugs for money. (*See id.*). Similarly, the recording from the November 10 buy shows Mr. McGuire entering the store and talking to Mr. Pointer about cooking crack cocaine, but it does not show an exchange of drugs. (Gov't Exh. 4; Cr. Doc. 60 at 18, 27).

Although the videos do not show drug sales, Mr. McGuire testified that on both occasions, Mr. Pointer sold him cocaine. (Cr. Doc. 60 at 18, 27). After each controlled buy, Mr. McGuire returned to Agent Jarrell and turned in the ounce of cocaine that he had purchased, and Agent Jarrell again searched Mr. McGuire *and* his car, finding no contraband. (*Id.* at 10–11, 23, 27, 133–34).

After Mr. McGuire had made the two controlled buys, Agent Jarrell obtained a search warrant for Service Plus. (Cr. Doc. 60 at 90, 106). On December 2, 2011, during the search, officers found cocaine and a loaded handgun; the cocaine was in a plastic case sitting on top of a work bench, and the gun was located on a shelf under the bench, about three to five feet away from the cocaine. (*Id.* at 107, 112–13, 147–48, 154, 158). The officers also found approximately $900 in the work bench and another $3,280 in Mr. Pointer's pocket and in the store till. (*Id.* at 121–22).

While officers were searching the store, Mr. Pointer told Officer Jason Wigginton that "a male subject" would send people to Mr. Pointer to purchase drugs, and would occasionally show up at the store "to collect his share of the money" from those sales. (Cr. Doc. 60 at 175, 179–80). After an officer found the cocaine on Mr. Pointer's work bench, Mr. Pointer, who had been trying to get Agent Jarrell's attention, said: "[T]hat's what I wanted to talk to you about, I forgot it was there." (*Id.* at 123). And after an officer found the gun under the work bench, Mr. Pointer "said he had that for defense of the business, from people jumping the fence trying to steal stuff from him." (*Id.* at 147–48, 154).

3

After the Government rested, trial counsel called David Shutt, a patrolman for the City of Decatur, who testified that he had once responded to a call at Service Plus about an attempted burglary. (Cr. Doc. 60 at 208–09). They also called Mr. Pointer's employee, Derek Tapscott, who testified that he was aware of "a few" burglaries or attempted burglaries of the store. (*Id.* at 213–14, 229–30). Mr. Tapscott further testified that, in addition to other precautions, Mr. Pointer kept a gun for "[p]rotection of the shop." (*Id.* at 230–31). A third defense witness who had been subpoenaed to testify failed to appear at trial. (*Id.* at 257–58).

While the attorneys waited for the subpoenaed witness to appear, the court asked Mr. Pointer about whether he had decided not to testify; when he said that he would not testify, the court questioned him about whether he understood the consequences of that decision. (Cr. Doc. 60 at 258–60). Mr. Pointer stated that he had made his decision independently and that he was satisfied with his decision. (*Id.* at 259).

After a short break, the court explained to the jury: "[I]n an effort not to detain you any longer than necessary with a missing witness, the parties have reached a stipulation" that on August 27 and 28, 2005, someone reported attempted burglaries at Service Plus. (Cr. Doc. 60 at 260). After the court read the stipulation, the defense rested. (*Id.* at 261).

The jury found Mr. Pointer guilty on all charges. (Cr. Doc. 53). After the verdict, Mr. Pointer's appointed attorneys withdrew and he retained a new attorney. (Cr. Doc. 63; Cr. Doc. Minute Entry, Jan. 22, 2013). The new attorney promptly filed a motion for judgment of acquittal or for a new trial, contending that the Government had presented insufficient evidence to support any of the four charges. (Cr. Doc. 64). The court denied the motion. (Cr. Doc. 67).

The court sentenced Mr. Pointer to concurrent 16-month sentences for each of the three drug counts, to be followed by 60 months imprisonment on the gun count. (Cr. Doc. 70).

Mr. Pointer appealed only his conviction for possession of a firearm in furtherance of a drug trafficking crime. *See United States v. Pointer*, 553 F. App'x 966 (11th Cir. 2014). The Eleventh Circuit affirmed his conviction, stating:

> Given that Pointer's gun (.45 auto pistol) was loaded, easily accessible in the shop where he sold cocaine, and in close proximity to drugs and money that could have been drug proceeds, a reasonable jury could have found a sufficient nexus between the gun and the drug trafficking crime to establish a violation of § 924(c). Besides, Pointer had stated that he kept the gun to protect his business; and a reasonable jury could believe that his business included drug trafficking. Thus, the evidence presented at trial was sufficient to establish that Pointer possessed his gun in furtherance of a drug trafficking crime.

*Id.*

## II. DISCUSSION

Mr. Pointer contends that trial counsel rendered ineffective assistance because (1) they failed to present evidence showing that Mr. Pointer possessed the gun for protection of his shop instead of in furtherance of a drug trafficking crime; (2) they refused to allow Mr. Pointer to testify on his own behalf; (2) they failed to call witnesses who would have "contradict[ed] and controvert[ed]" Mr. McGuire's testimony; and (4) the cumulative effect of counsel's failure to present evidence and call witnesses prejudiced him. (Doc. 1 at 4–5, 7; Doc. 5 at 23, 26–27).

To prevail on a claim of ineffective assistance of counsel, Mr. Pointer must demonstrate *both* that (1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 684–91 (1984). To establish deficient performance, the movant "must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010). "Judicial scrutiny of counsel's performance must be highly deferential" and the court must presume "that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S.

5

at 689. To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

    1. <u>Presenting Evidence that Mr. Pointer Possessed the Gun to Protect his Shop</u>

Mr. Pointer contends that he told his attorneys about approximately ten attempted burglaries of Service Plus and requested that they present the police reports about those attempted burglaries at trial. (Doc. 5 at 24). He submits to the court copies of three police reports about burglaries of Service Plus or cars parked outside the store, and one police report about an attempted burglary of the store.[2] (Doc. 18 at 5–8, 13–16).

Mr. Pointer cannot establish that his counsel performed deficiently by failing to submit the police reports about burglaries and attempted burglaries of Service Plus, or that any deficient performance prejudiced his defense. First, police reports are inadmissible hearsay unless they recount the reporting officer's first-hand knowledge of the contents of the report. *United States v. Shiver*, 414 F.2d 461, 463 (5th Cir. 1969).[3] Mr. Pointer does not indicate that any of the police reports recounted an officer's first-hand knowledge of a burglary or attempted burglary, nor do the police reports he now submits state that the officers witnessed the reported crime. (*See* Doc. 18 at 5–8, 11, 13–16). Counsel cannot perform deficiently by failing to present evidence that would not be admissible.

And even if the police reports were admissible, counsel does not perform deficiently by failing to present cumulative evidence. *Ford v. Hall*, 546 F.3d 1326, 1338 (11th Cir. 2008)

---

[2] Mr. Pointer also submits police reports about harassing communications, damage to the building, and criminal mischief, and "Aegis Public Safety" reports that do not give any information about the crime reported. (Doc. 18 at 9–12, 18–22).

[3] The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

("Counsel is not required to call additional witnesses to present redundant or cumulative evidence."). Mr. Pointer's counsel elicited testimony from a patrolman that he had once responded to an attempted burglary at Service Plus and from Mr. Pointer's employee that he was aware of "a few" burglaries or attempted burglaries. (Cr. Doc. 60 at 208–09, 229–30). In addition, the parties stipulated that someone had reported two other attempted burglaries of Service Plus in August 2005. (*Id.* at 260). Counsel's performance does not fall "below an objective standard of reasonableness under prevailing professional norms" by presenting evidence the defendant requested counsel to present, even if counsel presents less of it than the defendant may have wanted. *Ward*, 592 F.3d at 1163; *see also Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) ("The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."); *Ford*, 546 F.3d at 1338.

Finally, even if counsel performed deficiently by failing to present the police reports or more evidence of burglaries at Service Plus, Mr. Pointer cannot establish prejudice. A movant establishes prejudice by showing "a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added). Despite the evidence of burglaries and attempted burglaries at Service Plus, the jury rejected Mr. Pointer's defense that he possessed the gun to protect his legitimate business. He cannot show a reasonable probability of a different result based on counsel's failure to present more of the same evidence—especially because the police reports that he now submits to the court involve burglaries or attempted burglaries from 2003 through 2006, years before the controlled buys in November 2011. (Doc. 18 at 5, 7, 13, 15).

2. Barring Mr. Pointer from Testifying

Mr. Pointer contends that counsel provided ineffective assistance by refusing to allow him to testify in his own defense. (Doc. 1 at 5). He asserts that he would have testified about the numerous burglaries and attempted burglaries of Service Plus, and that his testimony was necessary because counsel failed to submit the police reports about those crimes. (Doc. 5 at 24–25). He alleges that, after he stated on the record that he had independently decided not to testify, he changed his mind, but his attorneys told him it was too late. (*Id.* at 25). Mr. Pointer submits an affidavit in which he swears that trial counsel "were adamant about [him] not testifying" because the other defense witnesses would provide the same testimony. (Doc. 5-1 at 5).

"[A] criminal defendant has a fundamental constitutional right to testify on his behalf . . . ." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (en banc). But a movant asserting ineffective assistance of counsel for an attorney's advice not to testify must still establish both deficient performance and prejudice. *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992).

In *Nichols v. Butler*, the Eleventh Circuit held that a movant had established ineffective assistance of counsel where counsel did not inform the defendant that he had a right to testify, and threatened to withdraw from the case mid-trial if the defendant insisted on testifying. 953 F.2d 1550, 1552 (11th Cir. 1992) (en banc). After concluding that counsel's performance was deficient, the Court held that the movant had demonstrated prejudice because "[t]he testimony of a criminal defendant at his own trial is unique and inherently significant." *Id.* at 1553. The Court emphasized that *Nichols* was "a very close case," in which "the only evidence that Nichols was the person involved in the robbery was the eyewitness identification of him by a store

8

employee who had glimpsed him only briefly." *Id.* at 1554. In addition, another witness testified that he and someone else had committed the robbery, and forensic evidence seized from the crime scene did not match the defendant. *Id.* at 1551. In those circumstances, the Court held that "there is at least a reasonable probability that, but for counsel's unprofessional conduct, the result in this case would have been different." *Id.* at 1554.

Even assuming that counsel performed deficiently by misinforming Mr. Pointer that he could no longer change his mind about testifying, Mr. Pointer cannot establish that the deficient performance prejudiced his defense. Mr. Pointer did not, and still does not, contest that he possessed the firearm; the only question is whether he possessed it "in furtherance of" a drug trafficking offense. 18 U.S.C. § 924(c)(1)(a). "In furtherance of" means "the firearm helped, furthered, promoted, or advanced the drug trafficking." *United States v. Woodard*, 531 F.3d 1352, 1362 (11th Cir. 2008). But "the presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction." *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002). Instead, the factfinder must consider: (1) "[t]he type of drug activity that is being conducted"; (2) "accessibility of the firearm"; (3) "the type of the weapon"; (4) "whether the weapon is stolen"; (5) "the status of the possession (legitimate or illegal)"; (6) "whether the gun is loaded"; (7) "proximity to the drugs or drug profits"; and (8) "the time and circumstances under which the gun is found." *Woodard*, 531 F.3d at 1362 (quotation marks omitted).

This scenario is not the same type of "very close case" as *Nichols*. *See* 953 F.2d at 1554. The Government presented evidence that Mr. Pointer possessed a loaded firearm that he stored on a shelf under a work bench, three to five feet away from where he stored cocaine on top of the same work bench. (Cr. Doc. 60 at 107, 112–13, 147–48, 154, 158). It also presented evidence

that officers found $900 on the same work bench as the gun and the drugs. (*Id.* at 121–22). Finally, the Government presented evidence that, on at least two occasions, Mr. Pointer sold an ounce of cocaine for approximately $1,400 from the shop. (*Id.* at 28, 95, 101, 133–34).

Mr. Pointer counters that evidence by stating that he would have testified about a large number of burglaries and attempted burglaries of Service Plus to explain why he had a gun hidden in the shop. (Doc. 5 at 24–25). But the jury had before it that very evidence. Witnesses testified about burglaries and attempted burglaries of Service Plus. An officer testified that, during the search, Mr. Pointer "said he had [the gun] for defense of the business, from people jumping the fence trying to steal stuff from him." (*Id.* at 147–48, 154). And Mr. Pointer's employee testified that Mr. Pointer kept a gun for "[p]rotection of the shop." (*Id.* at 230–31).

In the face of the conflicting evidence about Mr. Pointer's motivation for possessing the gun, the jury found Mr. Pointer guilty of possessing a firearm in furtherance of a drug trafficking offense. Although a criminal defendant's testimony in his own defense is "unique and inherently significant," *Nichols*, 953 F.2d at 1553, under these circumstances the court finds no reasonable probability of a different result based on Mr. Pointer's proffered testimony.

3. Calling Witnesses to Contradict Mr. McGuire's Testimony

Mr. Pointer contends that he asked his attorneys to present testimony from five or six clients of Service Plus who could contradict Mr. McGuire's testimony that he purchased cocaine from Mr. Pointer. (Doc. 5 at 26–27; Doc. 5-1 at 4). He asserts that the witnesses would have testified that they were at the store during the controlled buys, and that Mr. McGuire and Mr. Pointer were never alone together and never took part in a drug sale. (Doc. 12 at 8). He also argues that witnesses could have testified that the money seized at his store came from his legitimate business, not from drug sales. (*See* Doc. 18 at 1). In support of that argument, he

submits four affidavits from customers stating that in early December 2011—shortly before the search that revealed the cocaine, gun, and cash—they paid him in cash for work they had hired him to perform. (*Id.* at 23–26).

Courts disfavor claims of ineffective assistance based on counsel's failure to call certain witnesses because "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision." *Conklin v. Schofield,* 366 F.3d 1191, 1204 (11th Cir. 2004). To establish deficient performance, the movant must demonstrate "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Mr. Pointer cannot establish that no competent counsel would have failed to call witnesses to testify that Mr. McGuire and Mr. Pointer were never alone in Service Plus on November 3 and November 11. "Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." *Id.* at 1319. Given the uncontested evidence of cocaine in Mr. Pointer's shop and the statements he made to police officers during the search, the court finds that counsel made a reasonable strategic decision to focus on attacking Mr. McGuire's credibility and the unclear nature of the videos of the controlled buys. *Strickland*, 466 U.S. at 689 (holding that "[j]udicial scrutiny of counsel's performance must be highly deferential" and a court evaluating an attorney's performance must presume "that counsel's conduct [fell] within the wide range of reasonable professional assistance").

Besides Mr. McGuire's testimony that Mr. Pointer sold him cocaine on November 3 and November 11, the Government presented evidence that police officers found cocaine hidden in Mr. Pointer's shop; that while the officers were searching Service Plus, Mr. Pointer told Officer Wigginton that "a male subject" would send people to Mr. Pointer to purchase drugs, and would

11

occasionally show up at the store "to collect his share of the money" from those sales; and that after an officer found the cocaine on the work bench, Mr. Pointer said "I forgot it was there." (Cr. Doc. 60 at 123, 179–80).

Faced with all that evidence, counsel attempted to impeach Mr. McGuire by cross-examining him about his criminal history, including a conviction for tampering with evidence; the fact that he was acting as a confidential informant because he had been caught dealing drugs after having been convicted of a drug crime; and his hope of "get[ting] a break" on a sentence by cooperating with the police. (*Id.* at 30–31, 35, 54). Counsel also attempted to impeach Mr. McGuire by eliciting testimony about all the work Mr. Pointer had done on Mr. McGuire's car, apparently in an attempt to convince the jury that Mr. McGuire used the money he received from Agent Jarrell to pay for that work instead of for the drugs. (*Id.* at 37–46).

In addition to trying to impeach Mr. McGuire's testimony, counsel highlighted the paucity of information to be gleaned from the recording of the November 3 controlled buy. (Cr. Doc. 60 at 46–53). He questioned Mr. McGuire about the other people who appeared in the video, and the other voices that could be heard, and the fact that the video does not show Mr. Pointer and Mr. McGuire exchanging money or drugs. (*Id.*).

When counsel moved for a judgment of acquittal after the government rested, counsel argued that although "the major evidence . . . is the videotape," neither recording "show[s] hand-to-hand, they do not show drugs, they do not show money." (*Id.* at 203). Counsel also asserted that Mr. McGuire's testimony was "tainted by his history, by his desire to earn favor with the government," and it could not support a conviction "absent any corroborating evidence of the hand-to-hand transaction with Mr. Pointer." (*Id.* at 203–04).

The record shows that counsel made a strategic decision to focus on Mr. McGuire's credibility and the inconclusive nature of the recordings instead of calling witnesses to testify that Mr. McGuire and Mr. Pointer were never alone, and therefore could not have completed a drug sale. *See Conklin,* 366 F.3d at 1204. The court cannot conclude that no competent counsel would have made such a strategic decision. *See Adams v. Wainwright*, 709 F.3d 1443, 1445 (11th Cir. 1983) ("[An attorney's strategic] decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). As a result, Mr. Pointer cannot establish that counsel performed deficiently.

Mr. Pointer also argues that counsel should have called as witnesses certain clients who had paid Mr. Pointer in cash for work on their cars, to show that the cash seized from his store was not proceeds of drug sales. (*See* Doc. 18 at 1, 23–26). The court concludes that, like the other purported witnesses, counsel did not perform deficiently by focusing on Mr. McGuire's credibility and the video recordings instead of the source of the money seized at Service Plus. *See id.*

### 4. Cumulative Effect Claim

Mr. Pointer appears to assert a claim that the cumulative effect of counsel's failure to present the police reports and call witnesses prejudiced him. (Doc. 5 at 23). But "where there is no error . . . there can be no cumulative error." *United States v. House*, 684 F.3d 1173, 1210–11 (11th Cir. 2012); *see also Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273 (11th Cir. 2014). Mr. Pointer has not established that counsel was deficient for either failing to present the police reports or call witnesses; as such, he has not established that the errors cumulatively prejudiced his defense.

4. Motion for a Hearing

Mr. Pointer seeks an evidentiary hearing on his § 2255 motion. (Doc. 19). He states that, although he requested that the Federal Public Defenders share their case file with him, they told him that he is entitled only to evidence that was actually submitted at trial. (Doc. 18 at 2). He argues that because of that statement, the court should grant an evidentiary hearing. (*Id.*).

The district court must conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991); *see also* 28 U.S.C. § 2255(b). Mr. Pointer is not entitled to an evidentiary hearing because, as discussed above, the record shows that he is not entitled to relief. The court WILL DENY Mr. Pointer's motion for an evidentiary hearing.

5. Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Cases. The court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). This court finds that Mr. Pointer's claims do not satisfy either standard. The court WILL DENY a certificate of appealability.

**III. CONCLUSION**

The court WILL DENY Mr. Pointer's § 2255 motion.  The court WILL DENY Mr. Pointer's motion for an evidentiary hearing.  The court WILL DENY Mr. Pointer a certificate of appealability.

**DONE** and **ORDERED** this 27th day of April, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE